FILED
2021 Apr-23  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **vs.** | ) | **3:05-CR-00257-SLB-HNJ-10** |
| | ) | |
| **DARRYL DWAYNE RUSSELL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on four *pro se* motions filed by

Defendant Darryl Dwayne Russell: (1) a "Motion to Correct an Illegal Sentence,"

(doc. 816)[1]; (2) a "Motion for Additional Authority Pursuant to Motion to Correct

an Illegal Sentence," (doc. 817); (3) a motion for relief pursuant to the First Step

Act of 2018, (doc. 837); and (4) a motion for compassionate release due to

COVID-19, (doc. 839).  In his first two motions, Mr. Russell argues that his

sentence must be corrected because it was improperly enhanced in violation of his

constitutional rights.  (Doc. 816); (doc. 817).  Mr. Russell also argues that he

should be resentenced pursuant to the First Step Act because it changed the

penalties for his convictions and because his sentence was unjustly enhanced based

on prior convictions.  (Doc. 837).  Finally, he seeks compassionate release

---

[1] Reference to a document number, ["Doc. ___"], refers to the number
assigned to each document as it is filed in the court's record.  Page number
citations refer to the page numbers assigned to the document by the court's
CM/ECF electronic filing system.

pursuant to 18 U.S.C. § 3582(c)(1)(A) because he asserts that he is at elevated risk from the current Covid-19 pandemic.  (Doc. 839).  After considering the submissions of the parties, the court finds that Mr. Russell's first three motions are due to be denied, but his motion for compassionate release pursuant to Section 3582(c)(1)(A) is due to be granted.

## I.    BACKGROUND

In 2005, Mr. Russell was indicted along with 21 codefendants as part of a wide-ranging drug conspiracy.  (Doc. 245).  Mr. Russell was charged via superseding indictment with 1 count of conspiracy "to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, a controlled substance, and one thousand (1,000) kilograms or more of a mixture and substance containing a detectable amount of marijuana, a controlled substance" in violation of 21 U.S.C. §§ 841 & 846.  (*Id.* at 2–3).  He was also charged with 1 count of knowingly and intentionally attempting to possess with intent to distribute "five hundred (500) grams or more of a mixture and substance containing a detectable amount of cocaine, a controlled substance" in violation of 21 U.S.C. §§ 841 and 846.[2]   (*Id.* at 4).  Before Mr. Russell went to

_____

[2] It is worth noting that other defendants charged in the same superseding indictment were charged with different conduct for which Mr. Russell was not charged, including possession with intent to distribute "cocaine base, more commonly referred to as 'crack cocaine,' a controlled substance."  (Doc. 245 at 3, 5–6).

trial, the government filed a 21 U.S.C. § 851 notice of previous convictions, notifying the court that Mr. Russell had previous convictions in Alabama for unlawful distribution of a controlled substance and unlawful possession of a controlled substance, which would enhance his sentence. (Doc. 300).

A jury found Mr. Russell guilty of both charges against him, finding that he had conspired to distribute more than 100 but less than 1,000 kilograms of marijuana and 5 kilograms or more of cocaine and that he had possessed with intent to distribute at least 500 grams but less than 5 kilograms of cocaine. (Doc. 434); (doc. 435). Based on his offense level and criminal history, Mr. Russell's applicable Sentencing Guidelines called for a sentence of 360 months to life. (Doc. 647 at 23). However, because of his prior convictions, he was subject to an enhanced mandatory minimum statutory sentence of life in prison. (*Id.*).

At sentencing, the court stated that the evidence showed that Mr. Russell was an organizer or leader of extensive criminal activity. (Doc. 680 at 4). The court also emphasized that Mr. Russell was facing a life sentence because of his prior drug convictions and recidivism. (*Id.* at 10–11). The court sentenced Mr. Russell to life in prison for both counts of conviction, to be followed by 120 months' supervised release should he be released from prison. (Doc. 649 at 2–3). Mr. Russell filed a direct appeal and the Eleventh Circuit affirmed. *United States v. Yarbrough*, 260 F. App'x 230 (11th Cir. 2008).

3

In 2009, Mr. Russell filed a 28 U.S.C. § 2255 motion to vacate his sentence, arguing that his sentence was unconstitutional on multiple grounds.  (CM/ECF for the District Court for the Northern District of Alabama, case no. 3:09-cv-08016-SLB-HGD, doc. 1).  A magistrate judge entered a Report and Recommendation, recommending that the court deny Mr. Russell's Section 2255 motion because he had failed to raise any meritorious claims for relief.  (*Id.*, doc. 12).  This court adopted the Report and Recommendation and denied Mr. Russell's motion to vacate his sentence on the merits.  (*Id.*, docs. 17–18).

Mr. Russell is now 53 years old and is currently incarcerated at USP Atlanta serving his life sentence.  *See* https://www.bop.gov/inmateloc/ (last visited April 22, 2021).  While incarcerated, Mr. Russell has taken GED classes and has also taken many other educational courses.  (Doc. 855-1).  He has had multiple minor disciplinary incidents while in prison, but his last infraction was in 2014.  (*Id.*).  According to information from the Bureau of Prisons, USP Atlanta currently has 9 active inmate cases and 19 active staff cases of COVID-19.  *See* https://www.bop.gov/coronavirus/ (last visited April 22, 2021).

## II.    DISCUSSION

### A. Motions to Correct Illegal Sentence

Mr. Russell has filed two *pro se* motions in which he states that the court should correct his illegal sentence.  (Doc. 816); (doc. 817).  In his first motion, Mr.

Russell argues that his sentence violates his constitutional rights, as his sentence was improperly enhanced based on a prior conviction.  (Doc. 816).  He asserts that, pursuant to the operative categorical approach for determining whether a state conviction qualifies as a predicate offense for a federal conviction or sentence, his prior conviction should not qualify as a predicate offense supporting sentence enhancement.  (Doc. 816).  In his second motion, which he styles as a "Motion for Additional Authority Pursuant to Motion to Correct an Illegal Sentence," Mr. Russell again argues that his sentence was improperly enhanced, this time based on multiple prior convictions, in violation of his constitutional rights.  (Doc. 817).  He asserts that he is actually innocent of the predicate offenses used to enhance his sentence.  (*Id.* at 4).

The government filed a response to Mr. Russell's motions, arguing that the motions should be dismissed as second or successive Section 2255 motions to vacate his sentence.  (Doc. 825).  The government further asserted that, even if Mr. Russell's motions were not second or successive Section 2255 motions, they would be meritless.  (*Id.*).

In reply, Mr. Russell argues that the government waived its right to address the merits of his argument about his improperly enhanced sentence by failing to respond to it.  (Doc. 828 at 1).  He also asserts that this court has jurisdiction over his motions under the "All Writs Act" because his sentence is illegal, he is actually

innocent, and he has experienced a miscarriage of justice that can overcome a procedural default. (*Id.* at 2–3). He repeats his argument that his sentence was improperly enhanced. (*Id.* at 3).

The court finds that it lacks jurisdiction over Mr. Russell's self-styled motions to correct his sentence.[3] In his motions, Mr. Russell collaterally challenges the validity of his sentence by arguing that it was illegally enhanced. (Doc. 816); (doc. 817). "Typically, a petitioner collaterally attacks the validity of his federal sentence by filing a petition under 28 U.S.C. § 2255." *Sawyer v. Holder*, 326 F.3d 1363, 1365 (11th Cir. 2003)); *see also McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1081 (11th Cir. 2017) (*en banc*) ("Section 2255(e) makes clear that a motion to vacate is the exclusive mechanism for a federal prisoner to seek collateral relief unless he can satisfy the 'saving clause' at the end of that subsection[.]"). Accordingly, because Mr. Russell's motions challenge the validity of his sentence, they are properly construed as motions to vacate his sentence under Section 2255. *See Sawyer*, 326 F.3d at 1365; *McCarthan*, 851 F.3d at 1081. Mr. Russell previously filed a Section 2255 motion to vacate his sentence that this court denied on the merits. (CM/ECF for the District Court for the Northern District of Alabama, case no. 3:09-cv-08016-SLB-HGD, doc. 1, docs. 17–18). Thus, Mr. Russell's motions are second or successive

---

[3] Because the court lacks jurisdiction over the motion, as the government asserts, Mr. Russell's argument that the government waived issues is meritless.

6

Section 2255 motions.

To file a second or successive Section 2255 motion to vacate sentence, a movant "must first file an application with the appropriate court of appeals for an order authorizing the district court to consider it." *Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003) (citing 28 U.S.C. § 2244(b)(3)(A)).  If the movant does not obtain authorization from the appropriate court of appeals—here, the Eleventh Circuit—before filing his motion, the district court lacks jurisdiction to consider the movant's second or successive Section 2255 motion.  *Id.*  In this case, there is no evidence in the record that indicates that Mr. Russell sought or received permission from the Eleventh Circuit to file a second or successive Section 2255 motion.  Therefore, this court lacks jurisdiction over Mr. Russell's motions challenging the validity of his sentence and the court will dismiss the motions.  *See id.*

### B. Motion for Relief Pursuant to the First Step Act

Mr. Russell has also filed a motion seeking a modification of his sentence pursuant to Section 3582(c)(1)(A) and the First Step Act of 2018.  (Doc. 837).  Mr. Russell describes his conviction and the background of the First Step Act, stating that the First Step Act made the Fair Sentencing Act retroactive and, thus, reduced the mandatory minimum sentences for covered crack cocaine offenses.  (*Id.*).  Mr. Russell then argues that he should not have received an enhanced sentence based

on prior felony drug offenses because he asserts that, under the categorical approach for determining predicate offenses as set forth in current law, his prior Alabama conviction for possession of a controlled substance did not qualify as a predicate offense meriting a career offender enhancement.  (*Id.* at 4–6).

Mr. Russell asserts in his motion that he is entitled to a full resentencing that takes his entire situation into consideration; he argues that, upon considering the factors set forth in 18 U.S.C. § 3553(a), the court should reduce his sentence to time served.  (*Id.* at 6–9, 13).  Further, he argues that he has shown extraordinary and compelling reasons supporting a reduction in his sentence because offenses like his disproportionally affect African Americans and because of his excellent behavior since his incarceration; he asserts that his supervised release term should be reduced for the same reasons.  (*Id.* at 9–13).[4]

"A district court lacks the inherent authority to modify a term of imprisonment."  *United States v. Jones*, 962 F.3d 1290, 1297 (11th Cir. 2020) (citing 18 U.S.C. § 3582(c)).  But, under Section 3582(c)(1)(B), a district court "may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B).

---

[4] To the extent that Mr. Russell seeks compassionate release based on Section 3582(c)(1)(A)'s "extraordinary and compelling reasons" provision, as opposed to the First Step Act's changes to drug offense penalties, the court will address that argument when considering Mr. Russell's second motion, which seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. 839).

The First Step Act "expressly permits" district courts "to reduce the sentences of crack-cocaine offenders in accordance with the amended penalties in the Fair Sentencing Act" of 2010. *Jones*, 962 F.3d at 1297. "Congress enacted the Fair Sentencing Act to reduce the sentencing disparity between drug-trafficking crimes involving crack cocaine and those involving powder cocaine" by increasing the quantity of crack cocaine necessary to trigger certain mandatory minimum sentences while keeping the provisions governing offenses involving powder cocaine the same. *United States v. Taylor*, 982 F.3d 1295, 1298 (11th Cir. 2020).

The First Step Act then made the changes implemented by the Fair Sentencing Act retroactive for "prisoners who were sentenced for certain crack-cocaine offenses before the Fair Sentencing Act took effect." *Id.* The First Step Act only allows sentence reductions where a prisoner's sentence "was imposed for a 'covered offense'" for which Section 2 or Section 3 of the Fair Sentencing Act modified the penalties. *Id.* at 1298–99. Because the Fair Sentencing Act only changed the penalties for offenses involving crack cocaine, not powder cocaine, the Eleventh Circuit has stated that "a drug-trafficking offense involving only powder cocaine would not be a covered offense" qualifying for a sentence reduction under the First Step Act. *Id.* at 1299.

The First Step Act also amended certain penalty enhancements for prior offenses under Section 851, effectively reducing the prior offenses that can trigger

enhanced penalties.  First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194

(2018), § 401; *see also United States v. Mathews*, 837 F. App'x 701, 703 (11th Cir.

2020) (summarizing Section 401 of the First Step Act).  "But section 401 plainly

states that it does not apply to sentences imposed before December 21, 2018, the

date of enactment."  *Mathews*, 837 F. App'x 701, 703 (11th Cir. 2020) (citing First

Step Act § 401(b)).

In this case, Mr. Russell cannot show entitlement to a sentence reduction

based on the First Step Act.  As an initial matter, to the extent that Mr. Russell

seeks a sentence reduction based on the changes to offenses triggering enhanced

penalties as set forth in Section 401 of the First Step Act, those changes were not

retroactive and, thus, do not apply to Mr. Russell because he was sentenced prior to

2018.  *See id.*  The retroactive extension of the Fair Sentencing Act's modification

of penalties for crack cocaine offenses also does not apply to Mr. Russell because

he does not have a "covered offense" as required by the language of the statute.

*See Taylor*, 982 F.3d at 1298–99.  Mr. Russell's indictment, jury verdicts, and

judgment all show that he was convicted for powder cocaine offenses, not crack

cocaine offenses.  (Doc. 245); (doc. 434); (doc. 435); (doc. 649).  This is especially

apparent because Mr. Russell was indicted for conspiracy to possess cocaine

hydrochloride and possession of cocaine, whereas other codefendants were

indicted specifically for crimes involving cocaine base, also known as crack

cocaine.  (Doc. 245).  Because Mr. Russell was convicted of powder cocaine offenses, not crack cocaine offenses, he does not have any covered offenses allowing a reduction in sentence under the First Step Act.  *See Taylor*, 982 F.3d at 1299.  Therefore, he is not entitled to resentencing and his motion is due to be denied.

As a final note, to the extent that Mr. Russell seeks to challenge the validity of his sentence because it was improperly enhanced under the career offender provisions based on prior convictions, the court lacks jurisdiction over that challenge to his sentence.  As discussed above, such a challenge would constitute an impermissibly second or successive Section 2255 motion over which this court lacks jurisdiction.  *See Farris*, 333 F.3d at 1216.  Accordingly, to the extent that Mr. Russell seeks to raise claims challenging the validity of his sentence, such claims are dismissed.

### C. Motion for Compassionate Release Pursuant to Section 3582(c)(1)(A)

In his final motion, Mr. Russell argues that he faces disproportionate risk from the current COVID-19 pandemic because he is a 52-year-old African American man with hypertension, diabetes, obesity, heart disease, and a prior stroke.  (Doc. 839).  He argues that his underlying conditions, coupled with the increased dangers of contracting COVID-19 in prison, merit compassionate

release.  He also argues that courts in other districts have granted relief in similar situations.  (*Id.*).

Mr. Russell—with the assistance of the Office of the Federal Public Defender—also filed a response in support of his motion for compassionate release.  (Doc. 855).  Mr. Russell seeks a reduction in sentence to time served pursuant to Section 3582(c)(1)(A) because there is COVID-19 in his correctional institution and he has a combination of three underlying conditions that increase his COVID-19 risk—type 2 diabetes, obesity, and hypertension.  He asserts that his high risk of contracting a serious case of COVID-19 due to the prison environment and his underlying conditions qualifies as an extraordinary and compelling circumstance meriting compassionate release.  He further argues that the court has discretion to determine whether he has shown extraordinary and compelling circumstances and other courts around the country have granted prisoners relief in similar circumstances, even where prisoners were serving a life sentence.  Mr. Russell states that he properly exhausted his administrative remedies because he requested compassionate release from the warden of his correctional institution more than 30 days before filing his motion with the court and received a denial from the warden.  (*Id.*).

Finally, Mr. Russell argues that the factors set forth in 18 U.S.C. § 3553(a) support his release.  (*Id.*).  Mr. Russell concedes that his Sentencing Guidelines

today would be 360 months to life, the same as when he was originally sentenced. (*Id.* at 16).  However, he argues that, because of sentencing modifications in the First Step Act, if he were sentenced today, he would face a lower statutory mandatory minimum of 15 years' imprisonment because of new mandatory minimums and because one of his prior felony offenses would no longer enhance his sentence.  (*Id.*).  He also argues that, had he been sentenced to a term of years, the court could have given him credit for time served in state prison.  (*Id.* at 17). He further argues that he has already served more than 13 years in federal prison— a significant sentence—and has served more than 20 years in prison considering the time that he has served in state custody.  (*Id.*). He states that he has moved from high to medium security confinement, has completed multiple education courses in prison, and has not received a disciplinary infraction in more than six years.  (*Id.* at 18).  He asserts that, considering the totality of the circumstances, a sentence of time served with a possible period of home confinement accurately reflects the severity of his crimes.  (*Id.* at 18–20).  Mr. Russell provides a release plan in which he states that he will reside with his fiancée.  (*Id.* at 20).

The government filed a response in opposition to Mr. Russell's motions, arguing that he failed to show extraordinary and compelling circumstances and that the applicable "statutes and guidelines do not support his request for relief."  (Doc. 863 at 1).  First, the government states that the court can only grant Mr. Russell

relief if he properly exhausted his administrative remedies.  (Doc. 863).  Further, the government argues that Mr. Russell is not entitled to relief because his circumstances do not qualify as extraordinary and compelling according to the Sentencing Commission policy statement relevant to Section 3582(c)(1)(A). Finally, the government argues that, even if Mr. Russell has shown extraordinary and compelling circumstances, he should not be granted relief because the Section 3553(a) factors do not support release, as Mr. Russell received a life sentence for drug crimes and has an extensive criminal history.  (*Id.*).

Section 3582, as amended by the First Step Act of 2018, states that courts generally cannot alter or modify a term of imprisonment after its imposition, but the court can reduce an inmate's term of imprisonment upon a motion for sentence modification from the Bureau of Prisons or from a prisoner, where the prisoner has properly exhausted his or her administrative remedies.  18 U.S.C. § 3582(c)(1)(A). To exhaust administrative remedies, a prisoner can (1) pursue all avenues of appeal if the Bureau of Prisons fails to bring a motion for modification of sentence at the prisoner's request, or (2) file a request for relief with the warden to which the warden does not respond within 30 days.  *Id.*

In this case, Mr. Russell states that he properly exhausted his administrative remedies because he filed a request for compassionate release with the warden of his correctional institution more than 30 days before filing his motion and received

14

a denial from the warden. *See* (Doc. 855 at 6); 18 U.S.C. § 3582(c)(1)(A). The

government appears to question the veracity of Mr. Russell's assertion that he

exhausted his administrative remedies but provides no evidence or other basis for

calling Mr. Russell's assertion into doubt. *See* (Doc. 863 at 3). Accordingly, the

court finds that Mr. Russell properly exhausted his administrative remedies and the

court can consider his motion for compassionate release on the merits. *See* 18

U.S.C. § 3582(c)(1)(A).[5]

Where a prisoner has properly exhausted administrative remedies, Section

3582(c)(1)(A), as amended by the First Step Act, allows a court to modify a

defendant's sentence "after considering the factors set forth in section 3553(a) to

the extent that they are applicable" *if* the court finds that "extraordinary and

compelling reasons warrant such a reduction" *and* finds that "such a reduction is

consistent with applicable policy statements issued by the Sentencing

Commission." 18 U.S.C. § 3582(c)(1)(A).

The relevant Sentencing Commission policy statement for Section

3582(c)(1)(A) sets forth several "extraordinary and compelling reasons"

warranting a reduction in sentence. U.S.S.G. § 1B1.13(1)(A) & cmt. 1. In light of

a lack of binding precedent, this court has previously determined—following

---

[5] The court also notes that the Eleventh Circuit has held that "Section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional." *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021).

guidance from the Second, Fourth, Sixth, and Seventh Circuits—that the policy statement is not "applicable" to Section 3582(c)(1)(A) motions filed by prisoners rather than the Bureau of Prisons. *United States v. Hewlett*, No. 5:93-CR-00137-SLB-SGC-2, 2020 WL 7343951, at *3–*4 (N.D. Ala. Dec. 14, 2020); 18 U.S.C. § 3582(c)(1)(A). Thus, this court has found that courts have discretion to determine whether a prisoner has shown extraordinary and compelling circumstances warranting compassionate release. *Hewlett*, No. 5:93-CR-00137-SLB-SGC-2, 2020 WL 7343951, at *3–*4; 18 U.S.C. § 3582(c)(1)(A).

In this case, the court finds that Mr. Russell has shown extraordinary and compelling reasons warranting a reduction in his sentence. *See* 18 U.S.C. § 3582(c)(1)(A). First, Mr. Russell suffers from multiple health conditions that increase or could increase the risk he faces from COVID-19, including type 2 diabetes, obesity, and hypertension. *See* (Doc. 839); (doc. 855). The CDC has stated that diabetes and obesity "can make you more likely to get severely ill from COVID-19," while hypertension "possibly [. . .] can make you more like to get severely ill from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 22, 2021). For people like Mr. Russell who have underlying conditions that elevate their COVID-19 risk, the CDC has emphasized the importance of taking precautions—such as social distancing, practicing proper hygiene, and wearing

16

masks—to combat the threat posed by COVID-19.  *See id.*

Mr. Russell cannot effectively take the necessary steps to protect himself from infection while he is incarcerated.  Correctional institutions create extreme challenges in controlling the spread of COVID-19 because of a lack of resources and difficulties keeping those who have the virus or have been exposed to the virus separate from uninfected inmates.  *See* Patricia Davidson, et al., *Open Letter to Hon. Larry Hogan, Governor of Maryland*, https://bioethics.jhu.edu/wp-content/uploads/2019/10/Johns-Hopkins-faculty-letter-on-COVID-19-jails-and-prisons.pdf (last visited April 22, 2021) (letter from numerous faculty members at Johns Hopkins University schools of medicine, nursing, and public health stating that prisons are associated with high transmission rates of infectious diseases and opining that the close quarters, inability to social distance, and lack of resources for sanitization in prisons heightens the COVID-19 risk); *see also* Brendan Saloner, et. al, *COVID-19 Cases and Deaths in Federal and State Prisons*, 324 JAMA 6 (2020) (stating that COVID-19 "represents a challenge to prisons because of close confinement [and] limited access to personal protective equipment").  Atlanta USP currently has active cases of COVID-19, which creates a high risk of the virus spreading and makes it extremely difficult for an inmate like Mr. Russell to stay away from people with the virus.  *See* https://www.bop.gov/coronavirus/ (last visited April 22, 2021); *see also* Gregg S. Gonsalves, et al., *Achieving a Fair and*

*Effective Covid-19 Response: an Open Letter to Vice-President Mike Pence, and other Federal, State and Local Leaders from Public Health and Legal Experts in the United States;* https://law.yale.edu/sites/default/files/area/center/ghjp /documents/march6_2020_final_covid-19_letter_from_public_health_ and_legal_experts_2.pdf (last visited April 22, 2021) (open letter signed by hundreds of legal and health professionals stating that individuals "residing in close quarters," including people incarcerated in prisons, "are especially vulnerable to COVID-19"); *United States v. Potts*, No. 06-80070-CR, 2020 WL 5540126, at *3 (S.D. Fla. Sept. 14, 2020) (stating that, "[d]ue to the conditions under which inmates live, they are at extreme risk of infection once COVID-19 breaches prison walls").  In light of these conditions, Mr. Russell likely cannot follow the CDC guidelines for taking precautions to protect against COVID-19 and, thus, is especially vulnerable to the virus.

Therefore, Mr. Russell has shown that he faces an enhanced risk of contracting a serious or even fatal case of COVID-19 because of his combination of multiple underlying conditions and the difficulties controlling the spread of COVID-19 in prisons.  Under those circumstances, Mr. Russell's health issues are sufficiently serious, in light of the global COVID-19 pandemic, to meaningfully contribute to a showing of extraordinary and compelling circumstances warranting compassionate release.

Further, Mr. Russell need not rely solely on his health issues to show extraordinary and compelling circumstances warranting compassionate release; that fact that Mr. Russell would face a much lighter sentence if he were sentenced today bolsters his showing of extraordinary and compelling circumstances. When Mr. Russell was sentenced, 21 U.S.C. § 841(b)(1)(A)—his statute of conviction—provided for an enhanced penalty of mandatory life imprisonment if the defendant was convicted "after two or more prior convictions for a felony drug offense have become final." 21 U.S.C. § 841(b)(1)(A) (2006). A felony drug offense is any drug offense punishable by more than one year in prison. 21 U.S.C. § 802(44). Mr. Russell had two such qualifying offenses when he was sentenced, one for unlawful distribution of a controlled substance and one for unlawful possession of a controlled substance. (Doc. 300). Therefore, the court sentenced Mr. Russell to life in prison in accordance with the applicable mandatory minimum. 21 U.S.C. § 841(b)(1)(A) (2006); (Doc. 647 at 23).

However, the First Step Act of 2018 made changes to the scheme of enhancements for convictions under Section 841(b)(1)(A). *See* First Step Act § 401. After the passage of the First Step Act, a defendant convicted under Section 841(b)(1)(A) faces a mandatory minimum 15-year sentence if he has been previously convicted of one "serious drug felony" and a mandatory minimum 25-year sentence if he has been previously convicted of two or more "serious drug

felonies." 21 U.S.C. 841(b)(1)(A). "Serious drug felonies" are limited to

violations of certain specified federal statutes and violations of state law involving

manufacturing, distributing, or possessing with intent to manufacture or distribute

a controlled substance; to qualify as a serious drug felony the conviction must also

be punishable by a maximum term of imprisonment of at least 10 years. 21 U.S.C.

§ 802(57); 18 U.S.C. § 924(e)(2). The changes instituted in Section 401 of the

First Step Act are not retroactive. First Step Act § 401.

Despite the fact that the First Step Act's changes to the penalties for drug

offenses are not retroactive, they still have bearing on Mr. Russell's ability to show

extraordinary and compelling reasons warranting a reduction in his sentence. If

Mr. Russell were sentenced today, he would face a much lower mandatory

minimum sentence—and certainly not a mandatory life sentence. One of Mr.

Russell's predicates for his enhanced sentence under Section 841(b)(1)(A) was an

Alabama conviction for simple possession of a controlled substance. (Doc. 300).

That offense does not involve the manufacture or distribution of a controlled

substance and, thus, does not qualify as a "serious drug felony" for the purposes of

Section 841(b)(1)(A). *See* 21 U.S.C. § 802(57); 18 U.S.C. § 924(e)(2). Therefore,

after the passage of the First Step Act, Mr. Russell would only have one prior

conviction of a serious drug felony and would face a mandatory minimum sentence

of 15 years in prison rather than a mandatory life sentence. *See* 21 U.S.C.

§ 841(b)(1)(A).  This large disparity between Mr. Russell's sentence and the

sentence that someone who committed the same offense would face today calls

into question the justice of Mr. Russell's sentence.

The Eleventh Circuit has not yet issued a published opinion addressing the

matter of whether extreme sentencing disparities can qualify as extraordinary and

compelling reasons for compassionate release under Section 3582(c)(1)(A).

However, the Fourth Circuit has adopted the reasoning set forth by multiple district

courts that the severity of a sentence when there is an "enormous disparity between

that sentence and the sentence a defendant would receive today, can constitute an

'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." *United

States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020) (specifically addressing a

sentencing disparity created by the changes made by the First Step Act to stacked

sentences under 18 U.S.C. § 924(c)).  Further, other district courts outside of this

circuit have granted compassionate release in circumstances similar to the case at

hand, finding that prisoners serving a life sentence had shown extraordinary and

compelling circumstances in part because of new sentencing disparities after the

First Step Act's sentencing reforms.  *See, e.g., United States v. Lii*, No. CR 06-

00143 JMS (01), 2021 WL 1113663, at *8 (D. Haw. Mar. 23, 2021) (finding that

"the enormous disparity between the sentence Defendant received and the one he

would receive today, and the fact that Defendant was a low to mid-level distributor

of methamphetamine makes this a 'grievous case[]' for which 'individual relief' is appropriate under the compassionate release statute"); *United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 505 (S.D. Iowa 2020) (finding extraordinary and compelling circumstances where First Step Act sentencing reforms would reduce the defendant's life sentence by "decades" if he were sentenced today).

This court finds the reasoning of the Fourth Circuit and other district courts persuasive. Accordingly, the court finds that the enormous disparity between Mr. Russell's current life sentence and the 15-year mandatory minimum sentence that he would be subject to if he were sentenced today creates a manifest injustice that supports a finding of extraordinary and compelling circumstances in this case. *See* 18 U.S.C. § 3582(c)(1)(A). Thus, upon consideration of both Mr. Russell's high risk from COVID-19 and the injustice of his sentence, the court finds that Mr. Russell has shown extraordinary and compelling circumstances warranting compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A).

The court also finds that consideration of the factors set forth in Section 3553(a) supports compassionate release. *See id.* Section 3553(a) requires courts to impose sentences that are "sufficient, but not greater than necessary" in light of a multitude of factors. 18 U.S.C. § 3553(a). Those factors include, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the

offense and provide just punishment, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* Here, the factors support a reduction in Mr. Russell's sentence.

First, the nature and circumstances of Mr. Russell's offenses do not militate against compassionate release. It is true that Mr. Russell was the leader in a large drug conspiracy. *See* (Doc. 245); (doc. 434); (doc. 435); (doc. 680 at 4). However, Mr. Russell's convictions did not involve the use of violence, which moderates the severity of his offenses. Further, the passage of the First Step Act, which lowered the penalties for multiple drug crimes including crimes like those committed by Mr. Russell, indicates that his crimes are no longer viewed as being quite as serious as they were when he was first sentenced. *See* First Step Act §§ 401, 404. Accordingly, Mr. Russell's offenses, while extremely serious, do not preclude granting him relief.

Mr. Russell's history and characteristics weigh in favor of granting him compassionate release. *See* 18 U.S.C. § 3553(a). While Mr. Russell does have an extensive criminal history—as the government points out—his prior crimes occurred when he was a relatively young man. (Doc. 647 at 18–20); (doc. 863). Further, Mr. Russell is now over 50 years old. The Sentencing Commission has found that "offenders over the age of 40 whose crime of conviction was

23

nonviolent recidivated at half the rate of violent offenders." *United States v. Smith*, 482 F. Supp. 3d 1218, 1226 (M.D. Fla. 2020) (citing Recidivism Among Federal Violent Offenders, United States Sentencing Commission (2019), at 3, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf). Moreover, Mr. Russell's prison record shows evidence of rehabilitation. The Supreme Court has held that courts "may consider evidence of the defendant's postsentencing rehabilitation." *Pepper v. United States*, 562 U.S. 476, 481 (2011). Since his incarceration, Mr. Russell's security classification has been downgraded from high to medium. (Doc. 855 at 18). Mr. Russell has also taken advantage of many educational opportunities and, after accruing some minor disciplinary violations early his incarceration, has not has a disciplinary infraction for more than six years. (*Id.*); (doc. 855-1). Taking all of these things into consideration, Mr. Russell's characteristics support granting him relief.

The need to impose a just sentence and avoid unwarranted sentencing disparities also weighs in favor of granting Mr. Russell's motion for compassionate release. *See* 18 U.S.C. § 3553(a). As discussed above, if he were sentenced today, Mr. Russell would face a mandatory minimum of 15 years in prison, a sentence that is substantially lighter than the mandatory minimum life sentence that he is currently serving. Thus, a large sentencing disparity now exists between Mr.

Russell's sentence and the sentences of similarly situated defendants who were sentenced after the passage of the First Step Act.  Section 3553(a) seeks to avoid such disparities "among defendants with similar records who have been found guilty of similar conduct."  *See* 18 U.S.C. § 3553(a).  The disparity also suggests that Mr. Russell's current life sentence does not provide "just punishment" for his offense, as his punishment now appears unduly severe.  *See id.*

The court acknowledges that, as Mr. Russell concedes, he would still face Sentencing Guidelines of 360 months to life if he were sentenced today.  (Doc. 855 at 16).  Nevertheless, the court finds that in Mr. Russell's particular situation, a downward variance would be appropriate.  The current COVID-19 pandemic, specifically in light of Mr. Russell's multiple underlying conditions and heightened vulnerability, renders Mr. Russell's sentence more harsh than it would be without the pandemic.  Further, as discussed above, Mr. Russell has shown good behavior in prison and is relatively unlikely to recidivate based on his age and nonviolent offenses.  Between his time in state and federal custody, Mr. Russell has already served more than 20 years in prison—more than the mandatory minimum that he would face if he were sentenced today.  After considering the totality of the circumstances in this case, the court finds that Mr. Russell's sentence as currently served adequately promotes the interests of justice.  *See* 18 U.S.C. § 3553(a).  Accordingly, after considering the Section 3553(a) factors, the court finds that Mr.

Russell has served a custodial sentence that is sufficient to reflect the seriousness of his crimes.  *See id.*  Because Mr. Russell has shown extraordinary and compelling reasons for a reduction in his sentence and the Section 3553(a) factors favor release, the court finds that, pursuant to Section 3582(c)(1)(A), Mr. Russell is entitled to compassionate release.

### III.   CONCLUSION

After considering Mr. Russell's motions, the court finds that only one motion merits relief.  The court construes Mr. Russell's *pro se* motions to correct his sentence as impermissibly second or successive Section 2255 motions. Accordingly, the court **will DISMISS** for lack of jurisdiction Mr. Russell's self-styled "Motion to Correct Sentence," (doc. 816), and "Motion for Additional Authority pursuant to Motion to Correct an Illegal Sentence," (doc. 817).

As for his motion for a reduction in sentence pursuant to the First Step Act, Mr. Russell cannot show entitlement to a sentence reduction because changes to prior offenses triggering enhanced penalties are not retroactive and because he was not convicted of a covered crack cocaine offense under the Fair Sentencing Act. Accordingly, the court **will DENY** Mr. Russell's motion for relief pursuant to the First Step Act, (doc. 837).

However, the court finds that Mr. Russell has made the requisite showings to entitle him to compassionate release under Section 3582(c)(1)(A), such that his

sentence should be reduced to time served.  Therefore, the court **will GRANT** Mr.

Russell's motion for compassionate release, (doc. 839). The court notes that Mr.

Russell still must serve his originally imposed term of supervised release.

For the safety of Mr. Russell and the community, he shall self-quarantine at

his approved residence for 14 days upon his release, except for necessary medical

treatment and only upon prior notice and approval by the probation officer, except

in a true emergency.

**DONE** and **ORDERED** this 23rd day of April, 2021.

_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE